UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| RICHARD D.[1], | ) |
|     Plaintiff, | ) ) ) |
| v. | )   CIVIL NO. 1:20cv299 |
| KILOLO KIJAKAZI,<br>Commissioner of Social Security, | ) ) ) ) |
|     Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. 42 U.S.C. § 423(d), § 1382c(a)(3). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield, supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act

      through September 30, 2017.

2.     The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.     Since the alleged onset date of disability, December 5, 2013, the claimant has had the following severe impairments: low back pain with sciatica/degenerative disc disease of the lumbar spine; Chronic fatigue; shoulder pain primarily of the left shoulder with moderate osteoarthritis; history of chronic tobacco abuse/chronic obstructive pulmonary disease/emphysema/chronic bronchitis; Anxiety, depression/bipolar disorder, and reported posttraumatic stress disorder. Beginning on the established onset date of disability, March 15, 2019, the claimant has had the following severe impairments: moderate osteoarthritis of the carpal joints of the right wrist; myocardial infarction in March 2019 with stent placement; shoulder pain primarily of the left shoulder with moderate osteoarthritis; history of chronic tobacco abuse/chronic obstructive pulmonary disease/emphysema/chronic bronchitis; anxiety, depression/bipolar disorder, and reported posttraumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

4.     Since December 5, 2013, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that prior to March 15, 2019, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except needs a sit/stand option, which allows for alternating between sitting and standing up every 30 minutes, if needed, but the positional change will not render the individual off task; only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling; never climbing ladders, ropes, or scaffolds; no overhead reaching with the left upper extremity; needs to avoid concentrated exposure to extreme cold, heat, humidity, pulmonary irritants, including fumes, odors, dust, gases, poorly ventilated areas and chemicals, as well as hazards, including operational control of dangerous moving machinery, work at unprotected heights, and work around slippery/uneven/moving surfaces. Mentally, the claimant is limited to understanding, carrying out and remembering instructions consistent with unskilled work (defined as occupations that can be fully learned within a short period of time of no more than 30 days, and requires little or no judgment to perform simple tasks), with the ability to sustain those tasks throughout the eight hour workday without frequent redirection to task); should not work in an environment that is stringently production or quota based, and may not perform fast-paced assembly-line type of

work, but can meet production requirements that allow him to sustain a flexible and goal oriented pace; must work in a stable setting where there is no sudden or unpredictable workplace changes in terms of use of work tools, work processes, or work settings, and if there are workplace changes, they are introduced gradually; only superficial interactions with supervisors, coworkers and the general public, defined as occasional and casual contact with no prolonged conversations; and no work with large groups of people.

6. After careful consideration of the entire record, the undersigned finds that beginning on March 15, 2019, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except needs a sit/stand option, which allows for alternating between sitting and standing up every 30 minutes, if needed, but the positional change will not render the individual off task; only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling; never climbing ladders, ropes, or scaffolds; no overhead reaching with the left upper extremity; needs to avoid concentrated exposure to extreme cold, heat, humidity, pulmonary irritants, including fumes, odors, dust, gases, poorly ventilated areas and chemicals, as well as hazards, including operational control of dangerous moving machinery, work at unprotected heights, and work around slippery/uneven/moving surfaces.. Mentally, the claimant is limited to understanding, carrying out and remembering instructions consistent with unskilled work (defined as occupations that can be fully learned within a short period of time of no more than 30 days, and requires little or no judgment to perform simple tasks), with the ability to sustain those tasks throughout the eight hour workday without frequent redirection to task); should not work in an environment that is stringently production or quota based, and may not perform fast-paced assembly-line type of work, but can meet production requirements that allow him to sustain a flexible and goal oriented pace; must work in a stable setting where there is no sudden or unpredictable workplace changes in terms of use of work tools, work processes, or work settings, and if there are workplace changes, they are introduced gradually; only superficial interactions with supervisors, coworkers and the general public, defined as occasional and casual contact with no prolonged conversations; and no work with large groups of people; and only frequent handling and fingering with the dominant right upper extremity.

7. Since December 5, 2013, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. The claimant's age category has not changed since the established disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Prior to March 15, 2019, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on March 15, 2019, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Prior to March 15, 2019, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

12. Beginning on March 15, 2019, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

13. The claimant was not disabled prior to March 15, 2019, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

14. The claimant was not under a disability within the meaning of the Social Security Act at any time through September 30, 2017, the date last insured (20 CFR 404.315(a) and 404.320(b)).

(Tr. 843-854).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits prior to March 15, 2019. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on July 28, 2021. On September 8, 2021, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be affirmed.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

On August 7, 2015, Plaintiff filed an application for DIB. On August 18, 2015, Plaintiff filed an application for SSI. In both applications, Plaintiff alleged he was disabled and had been so since December 5, 2013. On November 28, 2017, the ALJ entered an unfavorable decision. The Appeals Council declined to exercise review and ultimately this Court reversed and remanded the case. Thereafter, on May 4, 2020, after a new hearing, an ALJ entered a partially unfavorable decision. The present appeal followed.

In support of remand, Plaintiff argues that the vocational expert's testimony was insufficient to establish the reliability of the national job numbers, and that the national job numbers are also insufficient. "The Commissioner bears the burden of showing that there are a

6

significant number of jobs that the claimant is capable of performing." *Liskowitz v. Astrue*, 559 F.3d 736, 743-44 (7th Cir. 2009); *see* 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

At Step 5, the ALJ found that someone with Plaintiff's RFC could perform the following representative occupations: retail marker [Dictionary of Occupational Titles (D.O.T.)] #209.587-034, of which there were 135,000 such jobs available in the national economy; office helper (D.O.T.) #239.567-010, of which there 3,500 such jobs available in the national economy; and folder in a laundry (D.O.T.) #369.687-018, of which there 10,000 such jobs available in the national economy, for a total of 148,500 jobs.

While this area of the law has been somewhat unsettled in the past, the Seventh Circuit has recently upheld findings that jobs existing in much lower numbers were significant, and thus sufficient to meet the Commissioner's burden of proving the availability of employment that a disability claimant is capable of performing. In *Mitchell v. Kijkazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021), the Seventh Circuit stated that the 30,000 jobs represented by two occupations constituted a significant number. Thus, in this case, the 148,500 available jobs far exceed the amount that the Seventh Circuit has found significant. Clearly then, the ALJ properly found that considering Plaintiff's vocational factors and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform (Tr. 853).

Plaintiff also asserts that the VE's methodology in determining the number of jobs available is unreliable. Plaintiff points out that the VE admitted he did not know the methodology or formula used by SkillTRAN, the software program used to arrive at the national numbers. Thus, Plaintiff argues that without an explanation as to the methodology used and the methodology's reliability, the ALJ's Step 5 finding is not supported by substantial evidence.

This case is similar to *Bruno v. Saul,* 817 F, App'x 238 (7th Cir. 2020), where the VE also used the SkillTRAN software to determine the number of jobs available. .In *Bruno*, as in the present case, Plaintiff's attorney objected to the VE's testimony on the basis that a proper and rational methodology had not been explained. The Seventh Circuit affirmed this Court's decision upholding the ALJ's denial of benefits, finding that the VE provided a "reasoned and principled explanation," because the VE testified that he used SkillTRAN and also looked at the employment numbers by industry to come up with the numbers provided. *Id*. at 243. Here, the VE testified that, in addition to using SkillTRAN "we look at the DOT numbers . . . and then look at the industries where it would be most likely that those jobs would exist in the unskilled jobs, and utilize that as an estimate of the number of jobs that exist." (Tr. 920). Thus, as in *Bruno*, even though the VE did not testify as to the precise mechanics and statistical model involved in arriving at the estimates of the number of jobs available, he provided a "reasoned and principled explanation," which, as the Seventh Circuit noted is a "low substantial evidence standard." Thus, as there is no basis on which to remand, the ALJ's Decision must be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.

Entered: October 25, 2021.

        s/ William C. Lee
        William C. Lee, Judge
        United States District Court